IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEUTSCHE BANK SECURITIES INC., f/k/a DEUTSCHE BANC ALEX BROWN, INC., <br><br>         Appellant, <br><br>    v. <br><br>JOHN T. KENDALL, AS CHAPTER 7 TRUSTEE, <br><br>         Appellee. <br>_____ <br>IN RE: <br><br>CONSILIENT, INC. aka INFOCANVAS SOFTWARE, INC., <br><br>         Debtor. <br>_____/ | No. C 05-2430 CW <br><br>ORDER AFFIRMING JUDGMENT OF THE BANKRUPTCY COURT <br><br><br><br><br><br>Bankruptcy Case No. 02-40383 NK |

    Appellant Deutsche Bank Securities, Inc. (DBS) appeals the bankruptcy court's judgment granting Appellee Chapter 7 Trustee John T. Kendall's motion for summary judgment.  Having considered

all of the papers filed by the parties, the Court affirms the ruling of the bankruptcy court.

## BACKGROUND

On October 10, 2000, Jonathan Hare, an insider of Consilient, Inc., the bankrupt debtor, borrowed $1.5 million from DBS (the Hare Loan), providing Evolve stock as collateral.[1]  On the same day, Hare loaned that $1.5 million to Consilient, which in return gave Hare an unsecured subordinate promissory note (Sub Note) due six months later.  About a month thereafter, Hare executed a pledge agreement whereby he gave the Sub Note to DBS as additional security for the Hare Loan.  On April 4, 2001, shortly before the Sub Note was due, Hare and Consilient extended its maturity date and increased Consilient's debt to $1.6 million.  Consilient also opened an account at DBS with a $1.6 million balance and executed a guaranty granting Hare and DBS authority to draw upon Consilient's DBS account to satisfy the Sub Note.

In the summer of 2001, the Oak Hill Entities loaned Consilient about $4.25 million.  Oak Hill perfected a blanket security interest on all of Consilient's assets, including all of its investment property.

By early October, 2001, Consilient was in default on some of the Oak Hill loans and Oak Hill demanded the $1.6 million in Consilient's DBS account.  Hare and DBS disputed Oak Hill's right to the money.  On October 19, 2001, DBS froze the funds in Consilient's account, informing Oak Hill and Hare that, because of

---

[1] The parties do not dispute the facts of the case.

2

their threats to sue, DBS would give them notice of any change in its position before disbursing the funds to itself or anyone else. On November 30, 2001, after no progress was made among the parties towards resolving their differences, DBS transferred $1.38 million from Consilient's account to DBS to repay the Hare Loan, leaving a residue in the debtor account of approximately $300,000.  On the same day, shortly after DBS transferred the $1.38 million, Oak Hill foreclosed on all of its collateral with Consilient, including Consilient's DBS account.  DBS and Oak Hill ultimately settled their dispute by splitting the $1.38 million between them.

On January 23, 2002, Consilient filed a voluntary Chapter 7 bankruptcy and the Trustee was duly appointed.  Thereafter, Oak Hill obtained relief from the automatic stay to complete the foreclosure and obtain the $300,000 remaining in Consilient's DBS account.

On April 25, 2003, pursuant to 11 U.S.C. §§ 547(b), 548(a) and 550(a), the Trustee filed a Complaint to Avoid and Recover Preferential Transfers, or in the Alternative, Avoid and Recover Fraudulent Transfer, against defendants DBS and Hare.  On April 19, 2004, the Trustee brought a motion for summary judgment to resolve all claims in the Complaint, contending that DBS had failed to raise a valid defense to avoid a finding of a preference under 11 U.S.C. § 547.

DBS opposed the motion.  DBS asserted that because Oak Hill's security interest covered all of Consilient's assets, including the $1.38 million, none of that amount was available to pay unsecured creditors.  DBS contended that its transfer of the $1.38 million

3

thus was not a preference because it did not diminish the estate assets available to pay unsecured creditors, despite its concession that the requirements of § 547(b) were otherwise met and despite its failure to assert any § 547(c) defenses to avoidance of a finding of preferential transfer.

On July 6, 2004, the bankruptcy court issued an order granting the Trustee's summary judgment motion and finding that the transfer of funds to DBS was a preferential transfer.  On July 9, 2004, DBS filed this appeal of the bankruptcy court's order granting summary judgment.

## STANDARD OF REVIEW

A bankruptcy court's decision to grant summary judgment is reviewed de novo.  In re Nourbakhsh, 162 B.R. 841, 843 (9th Cir. BAP 1994) (citing Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir. 1992)); In re Baird, 114 B.R. 198, 201 (9th Cir. BAP 1990).  A reviewing court must determine whether the bankruptcy court correctly concluded that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law.  Nourbakhsh, 162 B.R. at 843 (citing Baird, 114 B.R. at 201).

## DISCUSSION

Neither party disputes the facts found by the bankruptcy court.  Accordingly, this Court reviews de novo the law governing preferential transfers and the application of that standard to the undisputed facts as found by the bankruptcy court.

The Bankruptcy Code allows a bankruptcy trustee to void payments made within ninety days of the filing of the bankruptcy

4

1  petition under certain circumstances.  Section 547(b) of the
2  Bankruptcy Code establishes the circumstances under which a payment
3  is an avoidable preference:
4      Except as provided in subsection c. of this section, the
        trustee may avoid any transfer of an interest of the
5       debtor in property--
6           (1) to or for the benefit of a creditor;
7           (2) for or on account of an antecedent debt owed by the
                debtor before such transfer was made;
8
            (3) made while the debtor was insolvent;
9
            (4) made--
10              (A) on or within 90 days before the date of the
                    filing of the petition; or
11              (B) between ninety days and one year before the date
                    of the filing of the petition, if such creditor at
12                  the time of such transfer was an insider; and
13          (5) that enables such creditor to receive more than such
                creditor would receive if--
14              (A) the case were a case under chapter 7 of this
                    title;
15              (B) the transfer had not been made; and
                (C) such creditor received payment of such debt to
16                  the extent provided by the provisions of this title.
17 11 U.S.C. § 547(b).  The parties do not dispute that the transfer of
18 Consilient's account to DBS fulfills these requirements.  Nor does
19 DBS assert any of the defenses to avoidance of transfer enumerated
20 in 11 U.S.C. § 547(c).
21      Instead, DBS asks the Court to apply the Ninth Circuit's
22 diminution-of-the-estate doctrine, which is normally used to
23 determine whether property that is transferred belongs to the debtor
24 for purposes of § 547.  <u>In re Superior Stamp & Coin Co.</u>, Inc., 223
25 F.3d 1004, 1007 (9th Cir. 2000).
26      The diminution of estate doctrine has been developed to test
        whether a debtor controlled transferred property to the extent
27      that he owned it: Essentially, the transfer must diminish
28
                                    5

> directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.

In re Kemp, 16 F.3d 313, 316 (9th Cir. 1994).

The Ninth Circuit cases cited by DBS discuss use of the diminution-of-the-estate doctrine to determine whether transfers by a debtor of borrowed funds constitute transfers of the debtor's property for purposes of § 547, an issue that is undisputed here. See id.; In re Nucorp Energy, Inc., 902 F.2d 729, 732-33 (9th Cir. 1990) (stating that property did not belong to debtor for purposes of § 547 because the estate was not diminished by the transfer); In re Futoran, 76 F.3d 265, 267-68 (9th Cir. 1996) (concluding that prepayment of future spousal obligations diminished the value of the estate). However, none of these cases implies that this doctrine should be applied as an alternative to § 547(b). Instead, these cases discuss the diminution-of-the-estate doctrine in relation to § 547(c) defenses not asserted here. Cf. In re Nucorp Energy, Inc., 902 F.2d at 732-33 (discussing diminution of estate in the context of § 547(c)(1) defense); In re Futoran, 76 F.3d at 267-68 (addressing diminution of estate in the context of § 547(c)(4) defense). The Ninth Circuit's use of the doctrine does not support ignoring the criteria set forth by § 547(b) for avoiding transfers.

Moreover, applying the requirements of § 547(b) to the facts of this case does not undermine the equitable purpose of preference law to accomplish proportionate distribution of the debtor's assets among its creditors. DBS relies on In re Hanson Restaurant, Inc.,

6

155 B.R. 758 (Bankr. D. Minn. 1993).  In Hanson, the trustee sued a guarantor to avoid an alleged preferential transfer of collateral to an undersecured creditor.  The court held that "a transfer to an undersecured, perfected, first priority creditor toward satisfaction of its debt, cannot be a preferential transfer to either the obligee or its guarantor."  Id. at 760.  The court stated that such a transfer does not diminish the estate.  Id.

The Court is unpersuaded by Hanson.  Under the Bankruptcy Code, undersecured creditors are treated as holding two claims; one fully secured and the other unsecured.  11 U.S.C. § 506(a); In re Fox, 229 B.R. at 165 n.2; see also In re McCormick, 5 B.R. 726, 729-30 (Bankr. N.D. Ohio 1980) (finding that preferential treatment of transfers to undersecured creditors comports with standard business practice); In re Ludford Fruit Products, Inc., 99 B.R. 18, 23 (Bankr. C.D. Cal. 1989) (concluding that an undersecured creditor received greater payment on its unsecured claim than other unsecured creditors and that transaction satisfied the requirements of an avoidable preference); In re Auto Train, 800 F.2d 1153, 1157 (D.C. Cir. 1986) (declaring that payments to an undersecured creditor are attributable to the unsecured portion of the debt despite evidence of the parties' contrary intent).  In such a situation, pre-petition transfers received by the undersecured creditor are deemed preferential because there is a presumption that an undersecured creditor first applies any transfer it receives from the debtor to the unsecured portion of the debt.

7

CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court granting the Trustee's motion for summary judgment is affirmed.

IT IS SO ORDERED.

Dated: 2/14/06



CLAUDIA WILKEN
United States District Judge

C-05-2420 CW

**U.S. Bankruptcy Court**
1300 Clay Street
Suite 300
P.O. Box 2070
Oakland, CA 94604

**Randall J. Newsome**
U.S. Bankruptcy Judge
1300 Clay Street, Suite 300
P.O. Box 2070
Oakland, CA 94604